Good morning, Your Honor. Robert Bisno appearing for plaintiff and appellant. This is a summary judgment appeal. Summary judgment is a drastic remedy. It should be used sparingly. It was not in this case. Judge Rial should not have granted the summary judgment as there are numerous issues of material fact which are controverted. One of the rights taken in a summary judgment is that of amending a complaint to conform to proof such as is allowed in Civil Code of Procedure 576 and confirmed in the Herrera v. Superior Court 1989 case at 158 Calab III 255 at 259. But in a nutshell, in a summary judgment motion any inference which could imply, not just state, but imply a material fact is to be interpreted in favor of the plaintiff. It's the Shin v. Hahn case 2007 42 Cal IV at 482. Counsel, may I ask you what the material issues of fact are in your view? Yes. To start with, Judge Rial got it wrong as to the existence of a contract. Judge Rial in his decision, transcript. Existence of which contract? The independent contractor agreement or the agreement that there would be a share of the profits? Which one are you referencing? Both of them. So is it your position that Judge Rial did not acknowledge a material issue of fact regarding the existence of the independent contractor agreement? That's one of my positions, Your Honor. How did that matter in this case? The independent contractor agreement, Judge Rial dismissed because it was not signed. I'm sorry. The entitlement representation agreement, which was specifically referred to, it was an exhibit. Okay. You moved from one contract to the other. So I was asking you about the independent contractor agreement. Judge Rial recognized that. Okay. That's what I thought. So we're talking about the unsigned agreement that purported to give your client a share of the profits. That's one of the two contracts, Your Honor. When you say one of the two contracts, what other contract is there? Your Honor, Judge Rial had a declaration from Ryan Ogolnik. That declaration read, BISNO and I reached an oral agreement that in addition to a monthly draw, BDE might be eligible for a discretionary success bonus at my sole discretion. That's the declaration of... But that declaration does... You're not arguing that that declaration rose to the level of a contract, are you? Your Honor, it's a statement about an oral contract. It is evidence, an inference of an oral contract, and I will describe how it is a binding contract. But counsel, if the contract provides total discretion, and I gather you're not contesting that, such a contract is unenforceable, is it not? No, Your Honor. That's not correct, and that's what Judge Rial cited. Under California Lettuce Growers versus Union Sugar, 45 Cal 2nd, 474, when a contract confers on one party a discretionary power affecting the right of the other, a duty is imposed to exercise that discretion in accordance with good faith and fair dealings. But you first have to have an enforceable contract. Do you have a case in California that says a contract that vests unbridled discretion in one of the parties is anything other than an illusory contract? What case makes that an enforceable contract? California Lettuce Growers versus Union Sugar Company, 45 Cal 2nd, 474, Your The case provides that the party who has the duty must, the word is must, exercise that discretion in accordance with good faith and fair dealing. That presupposes that there is a contract to be enforced, though, doesn't it? The inference from Mr. O'Golnick's declaration, the outright statement is he had a contract. That's what his declaration provides. He said Bisno and I entered into an agreement. Mr. O'Golnick's words, that is an agreement. Now, what happens to the discretion? My declaration, paragraphs 10 and paragraph 35, show that plaintiff's actions generated $10 million in profit. The property was purchased for $6.1 million. The property was sold for $17,250,000. There was no controversy about those numbers. So the question is, in light of the duty of good faith and fair dealing, which is implied in every California contract, even ones that are subject to the discretion of one party, would plaintiff be entitled to anything of that $10 million? And certainly the inference is, and this is where we get into summary judgment, that's a matter that reasonable jurors could disagree about. So, Your Honor, I do believe there were two contracts. May I speak to the second contract? Please. The second contract, the entitlement representation agreement, which Judge Real had in his hands and did not accept, he refused to accept on the basis it wasn't signed. Your Honor, it was an exhibit. It was specifically referenced in the ICA. Paragraph 3.1, exhibit B is a true and correct copy of the current draft of the aforementioned agreement. Your Honor, may I ask, can you give me the record site that you're reading from? The page in the record. Your Honor, I do not have that. I just have the document itself, which was referenced in Judge Real's document. Transcript. Okay. How would I go about finding that document? The document is called the independent contractor agreement. It's one that Judge Real had in his hands and was referring to, and it's the one which incorporated specifically section 3.01, exhibit B. Exhibit B is the entitlement representation agreement. This is not controverted. Judge Real did not accept the entitlement representation agreement because it was not signed. That's a mistake of law. An exhibit does not need to be signed to be binding. In fact, many exhibits are not signed. It is axiomatic that if a contract is signed, the signature on the contract accepts the contents of the exhibits. Now, a defendant will claim, oh, but this was just a draft. It wasn't binding, which then gets into the record. In my declaration, I declare, and I was the attorney for Mr. Ogolnik, I received emails. These are not subject to valid evidentiary objections. These satisfy the federal rules of evidence. I received documents. That document included an email from Mr. Ogolnik which said, I have sent the BISNO agreement, the ERA, no further changes, period. Additionally, it says something about he wants to wait and see how successful I am with city council. Well, that again goes back to paragraph 10 and paragraph 35 of my declaration. Plaintiff's actions generated $10 million of profit. That is entitled to an inference of success. So it is plaintiff, appellant's position that there were two separate and distinct contracts, and Judge Rial just got it wrong. May I speak now about some defenses in quantum error? Yes. With regard to the defenses, rules of professional conduct 3-300 and unclean hands, my declaration clearly provides that I sent Mr. Ogolnik a letter. The letter said, I direct you to retain separate counsel to review our relationship. The letter said, I am happy to discuss concerns with separate counsel. Mr. Ogolnik sends it back signed twice. First signature appears before I, Ryan Ogolnik, between August 9, 2011 and January 2012, consulted independent counsel regarding this letter. I have been fully advised by such independent counsel. He signs it a second time. Counsel, may I ask, when he signed that, was he just signing on behalf of VDC at the Your Honor, I'll answer that as I read his second statement. Because he was signing on every entity. Mr. Ogolnik states, I represent and warrant for myself and for any entity in which I have an interest. After consultation with independent counsel, I believe all transactions between me and Auburn H. BISNOW or BISNOW Development Enterprise LLC are fair and reasonable to me. At a bare minimum, that raises an inference. May I ask you, did you cite the California lettuce growers decision in your briefs? I did not. So if that's the case that supports your argument, that even though one side has unbridled discretion, there is an enforceable contract, why wouldn't you have cited that in your briefs to the court? I missed it, Your Honor. Okay. So is there any case that you cited to us in your briefs that supports your argument? Your Honor, I could not find such a case. But the implied covenant of good faith and fair dealing runs so long through That's not the point. The point is, there is a concern that this is an illusory contract. So at least in my mind, I would be reassured if there's a California case that said notwithstanding unbridled discretion vested in one of the parties, there is nevertheless an enforceable contract. And you cited us to California lettuce growers today, but that citation was not made in your briefs. So why should we accept that argument now? Your Honor, that's one of the purposes of oral argument. I am It's not the purpose of oral argument for you to cite to us cases that you have not cited in your brief. If an argument is not made in a brief, generally, we don't entertain it. Your Honor, to not entertain it here would allow an injustice because Judge Real deprived from plaintiff the opportunity to proceed to a trial. I'm simply laying out the two contracts that existed. Current California law. With regard to may I proceed to bad faith or unclean hands, do you want to save any time for rebuttal? I did, but I want to put on the case in chief and if I have anything thereafter or if you wish any questions, I will the bad hand, the bad faith argument or the unclean hands relates to my interfering with matters in front of a court-sanctioned sale. But my declaration, paragraphs 10 and 35 are clear. It was my actions that generated an additional $2.5 million in proceeds for the sale of the property. And on the topic of inferences, there is no statement declaration by Mr. Ogulnick suggesting unclean hands or a rule 3-300 violation. And the inference there where Mr. Ogulnick has provided testimony, he knows about this combined with my declaration. My declaration being the additional profits that I generated for the company overcomes this theory of unclean hands which, as everyone knows, this is a fact-specific and fact-intensive defense as is a rule 3-300 violation. Ogulnick didn't suggest any of those and I think the inference is clear. Your Honor, I will reserve the balance of my time, a minute and 15 seconds for rebuttal. Thank you. Judge O'Scallion, just for the record, that independent contract agreement is at A-S-E-R page 6. S-E-R page 6. Thank you, Judge, Your Honor. Thank you. Good morning, Your Honor. May it please the Court, I'm Robert Schor for the so-called eyeless parties. I'll be speaking for 10 minutes, my colleague for 5. All right. Thank you. Thank you. Speaking directly to the points raised during Mr. Bisnow's argument, Your Honor, first, we do agree that a contract that reserves sole and absolute discretion is illusory. And although we haven't had the opportunity to research the issue, what I expect to find under California law is that when a contract expressly reserves sole and absolute discretion, which is the language used in Mr. O'Gallnick's declaration, then that overrides, so to speak, the covenant of good faith and fair dealing. In other words, if Mr. O'Gallnick reserves sole and absolute discretion, then no exercise of that discretion could possibly violate the covenant of good faith and fair dealing. That's point one on that alleged contract. Point two, excuse me, point two, even if there were substantial evidence of some kind of a contract, that's not good enough for Mr. Bisnow's theory. Mr. Bisnow, to prevail, must prove that he has a contractual right that we interfered with to a percentage of the profits. Otherwise, his intentional interference theory doesn't hold together. In other words, his position is that, gee, we interfered with some right to, well, his position is that we interfered with some right to take 40% of Ryan O'Gallnick's profits. So at a minimum, in order for him to establish interference with that contract, he has to show that the contract was for a percentage of the profits. Mr. O'Gallnick does not say that. There is no evidence in the record of an enforceable contract. What about the declaration which states that there was an oral agreement reached that in that BDE might be eligible for a discretionary success bonus at my sole and absolute discretion? What was the effect of that language in your view? In our view, it has no effect. It's basically, I'm going to give you a monthly payment, and if I really, really, really like the job you did, I'll give you some more, but you can't count on that because it's within my sole and absolute discretion. Where did the 40% come from? The 40% was from the entitlement representing the written agreement that was never signed. That's his basis for 40%. Counsel, what's the unclean hands argument that you made? The unclean hand, when the entitlements were first obtained by BDE on behalf of BDC at the Met, obviously a restriction on alienation reduces the value of the land. So in later proceedings, BDC at the Met through a court-appointed receiver sought to remove that restriction on alienation. At a public hearing, Mr. Bisnow covertly hired an attorney to oppose that removal. That's unclean hands in our view because Mr. Bisnow on the one hand was hired to obtain entitlements for the property, and then he actively opposed an attempt to, in our view, fix, but in any event, make more valuable the entitlements that were actually received. Counsel, as a procedural matter, when the original ruling was made by Judge Rial, did he or did he not allow leave to amend the complaint? No, Your Honor. I don't recall that leave to amend was even requested. I may be mistaken about that. How can it be requested if the judge didn't indicate whether or not he was ruling, allowing leave to amend or not? Procedurally, how does that work? Procedurally, well, at a minimum, well, there are several issues that are involved on the merits of the amendment that he spoke to. Procedurally, I would expect that Mr. Bisnow in his opposition papers had an obligation to indicate that he had some interest in amending the complaint, especially since the hearing for this summary judgment motion was, as I recall, two weeks before our trial date. Generally, when the court renders a judgment, it'll say whether or not the judgment is with or without prejudice or with or without leave to amend. And if there is nothing said, isn't it generally assumed that there is leave to amend? I believe not, Your Honor. That would certainly not be my understanding on a case where summary judgment was entered on the merits. It's one thing to grant a pleadings motion. It's one thing to grant a pleadings motion, and even then, and I believe the rule, and I haven't looked at pleadings motion because this case didn't involve the pleading motion, but as I recall the rule, an order granting a pleadings motion that's silent on leave to amend. Do you consider summary judgment to be a pleadings motion? Absolutely not. And that's why... To make the distinction? That is a way to make the distinction, yes, Your Honor. Counsel, could I just go back to the quantum merit issue again? You heard opposing counsel say that Mr. Ogilnick signed on behalf of all interested. And the concern I have is whether or not the agreement was with VDC at the Met or with one of the other entities. Can you help us figure that out? Yes. The independent contractor agreement, which was an express contract, was signed with VDC at the Met. There was an express written contract between VDC at the Met and Mr. Business Company. Now I do want to flag a couple of things that are in the record. So you're conceding the quantum merit issue then? Oh no, not at all. Not at all. No, he was paid under the independent contractor's agreement. This was argued in the trial court and discussed, and in our appellate papers as well, Your Honor. Our position as to the independent contractor agreement is that because there was an express contract as supported by Mr. Business, that position testimony supported, set forth in the record and argued in our briefing. Our position as to the quantum merit claim is that there cannot possibly be a quantum merit claim as between VDE and VDC at the Met. The existence of an express contract. And is VDC, as I see the record, it doesn't seem to me that VDC at the Met is a party to this particular appeal. Is that correct? That is correct. It was not a party to the underlying action. As I understand Mr. Business' theory, it is that the individuals and entities who are the egos of VDC at the Met, and my only point in response to that is that even if procedurally such a request were proper, and we don't believe it was, even if such a, it would be futile because then any liability would be derivative of VDC at the Met's liability, and VDC at the Met can't possibly be liable in quantum merit because there was an express contract. Moreover, there is evidence, there is undisputed evidence in the record in the form of Mr. Business' deposition testimony that the contract was fully paid. Not only was there a contract, it was fully paid. So although I do have a minute left, if the court has no further questions, I'm happy to yield the balance of my time to my colleague. It appears not. Thank you, counsel. Thank you. Good morning, your honors. I represent the three defendants that appear at the end of the caption. Ridgemount Investments, Alec Isco, and David Ulmer. They're referred collectively as the Ridgemount defendants, but the point of my oral argument is that they're more appropriately referred to as the forgotten defendants. There's no mention of them in the operative pleading other than to collectively define all defendants and throw them in to the pot. In the opposition, in the underlying trial court, the opposition at page 10 and in the record, that is excerpts of records page 80, says, in an effort to cheat BDE out of its rightfully owed compensation and to interfere with BDE's contractual rights, Levine, Schottenstein, and Protilus, the Protilus defendants, manufactured a scheme and tale where they claim to, and then it proceeds to describe the misconduct. Not only are my clients not described in the opposition, not only are there no facts in the opposition or the opposition to the separate statement, but the thesis of the argument in the trial court, repeated here on appeal, is that my clients never consented to the $990,000 payment to Avalon that is the basis for liability, the basis for interference in this case, because the argument is by paying that money and entitling the defendants to extra money that it depleted the coffers of VDC at the Met, left no money for Mr. O'Gallnick and therefore derivatively no money for Mr. Bisno's company. But the argument is that, and it's correct, that on partial summary judgment in a case between these very defendants, my clients, one on the issue, that they never approved that $990,000 distribution from VDC at the Met. Mr. Bisno, even in his oral argument here, Mr. Bisno in his opening brief in this court of appeal, makes no mention of my clients. Pages 16 and 17 of the reply brief are the sole effort by BDE to make an argument as to why my client should be in this lawsuit. The argument starts with a concession. And the concession is that again, well, yeah, your clients didn't really do anything affirmatively that would have caused liability. But then without a single citation to any evidence, anywhere in the record, page 16 then says my client acquiesced in the efforts by other defendants to That's page 16 of the brief you're referring to? That is, that's 16 of the reply brief, BDE's reply brief, page 16 and 17, to the best of my knowledge, are the, it's the only place that there's any effort either in the trial court or before this court of appeal to address the point of my oral argument that my clients somehow have gotten caught up in this whole mess and don't belong here. So it starts with a concession that essentially there's no liability for my clients, no affirmative action, no affirmative misconduct. It then says without citation to any authority that my clients acquiesced in the distribution of the $990,000. But the reply brief says that you didn't raise any objections, so therefore by implication you acquiesced. What's your response? That does not state any of the elements of an intentional interference claim. There's neither an intent nor is there any interference. There's no citation to any authority, for it's not the law, that sitting by and allowing someone else to engage in misconduct itself constitutes an intentional tort. There's no negligence tort, no negligence interference claim in California. It has to both, we have to intend to interfere with the contract and we have to actually interfere with the contract by our action, not the derivative action of the party. But our action itself has to interfere with the contract. What about the ratification theory that your client subsequently approved all actions taken by Protolis, Levine, and Schotstein? What's your response to that language on page 16? A few things, Your Honor. The first is that that again does not state the tort. There's no after the fact, again, sort of acceptance that would constitute the intentional tort. The second is, again, there's absolutely no evidence of that. The only citation in the record is both ER-240-8 and SCR-95. Those are the two documents that are cited by, in the reply brief at page 16 and 17. Those documents literally are just, my clients were copied on emails, twice. Copied on relevant emails in this suit. Being copied on an email, again, cannot state an intentional tort. It cannot constitute interference under California law. Beyond that, if you dig into those two emails, which I certainly invite you to do if you haven't already, they are emails that describe that Mr. Bisno has brought an agreement. And he attaches a document that is a 10%, not a 40% contingency interest. So it's a document different from what he's suggesting in this very suit he should be able to enforce. And then the next email, after that document has been refused to be signed by Mr. Ogulnick, there is a reference to there should be some Exhibit B in the agreement. Literally the evidence, at best at this point, against my clients, the Ridgemount defendants, is that they were copied on two emails and didn't do the very misconduct that underlies the tort in this case. I would suggest that while we join in the other arguments, and I think they're meritorious, separately as well, a basis for affirming Judge Reel's, an alternate basis for Judge Reel's ruling on summary judgment for my client would be the absence of a shred of evidence regarding either intent or any actual interference. Thank you, counsel. Thank you. Rebuttal. Counsel, before you begin, may I ask you whether or not you agree with opposing counsel's distinction between a dismissal on a pleading and dismissal on summary judgment, which does not carry with it leave to amend? I do, Your Honor, and that's one of the reasons that we are asserting that we should be directed back to the trial court, because we did not have a right to amend. The granting of summary judgment is so draconian, there is no right in the plaintiff to amend. So you agree that once summary judgment is granted, there is no right to amend? That's my understanding of the procedure. So if that's the law, then what relief are you seeking from us if the law is that once summary judgment is granted, there is no leave to amend, and we're bound by that? What relief are you seeking from us, then? Your Honor, the injustice is by not overturning the summary judgment motion, we will be robbed of our day in court. If the summary judgment motion is overturned, which we believe it should be on the interference with contract claim, at that stage, we have leave to amend. We are back in front of the district court. We can amend. Counsel said it was a 10 percent agreement, not a 40 percent agreement. We have the lettuce grower case. Clearly lettuce grower does not allow, and I urge the court to read that case. I read lettuce grower while you were sitting down, and it does not say. It says that the material terms of the contract have to be set forth, and that was the question we had with you regarding the contract because it was a contract that was totally discretionary. So I'm not sure California lettuce growers helps you a lot because it sets forth the black letter rule that the terms of the contract have to be set forth clearly and distinctly. Your Honor, I came to a different conclusion on page 484. Addressing, Your Honors, you've exceeded your time, so could you wrap up, please? Yes. Quantum meruit. My declaration pages, pardon me, paragraphs 10 and 35, clearly provide that the defendants encouraged, participated, and benefited from the additional $10 million I created, and they didn't pay for it. In and of itself, it's respectfully submitted that should be quantum meruit, and with regard to the ERA, there was a question who it bound under paragraph 4, O'Gulnick and your affiliates. Counsel, before you conclude, what's your response to the Ridgemont defendants? How have you stated a material issue of fact regarding the Ridgemont defendants? I believe they're correct. They're correct. I believe they're correct, Your Honor. Oh, you see that. Yeah. I believe that Mr. Derby correctly pointed out that the wrongdoers, and this was determined by Judge Green, were the illest defendants. I believe that Mr. Derby has strength for that argument. All right. Thank you, Counsel. Thank you to both Counsel, all three Counsel. The case just argued is submitted for decision by the court. The next...
judges: O'scannlain, Fernandez, Rawlinson